# EXHIBIT 36

(Case No. 2:20-cv-04525)

Transcript of phone conversation between Plaintiff and KAREN THORP (Los Angeles County DA's office) on Aug 23, 2019

Thorp: Hi, may I speak with XXX?
PLAINTIFF: Yea, she is.
Thorp: (00:01) Okay. Hi, my name is Karen Thorp and I'm a head deputy at the Pomona branch of the district attorney's office.
PLAINTIFF: (00:16) Yeah.
Thorp: (00:18) And I'm calling you because I understand that you wanted to talk to somebody about your case not being filed?
PLAINTIFF: Yea.
Thorp: All right. What can we do for you?
PLAINTIFF: (00:31) So if you pay attention to the text messages before right before the incident, it shows that I was not expecting anything sexual. I was expecting the offender would go home after a couple of drinks and uh, because we had been drinking for three hours. So I passed out. According to toxicology, I did not blackout, I was not losing memory. I, I was losing consciousness.
Thorp: (01:12) Okay. And?
PLAINTIFF: (01:17) And the offender makes an indirect confession. He said he stretched me out because I was unconscious and I wasn't even aroused. I was not aware of any sexual act.
Thorp: (01:36) Okay. But after that you had sex with him, correct?
PLAINTIFF: (01:39) I'm sorry?
Thorp: (01:41) But following that, you had sex with him. Consensual sex, correct?
PLAINTIFF: (01:46) No, between April 6 and the last time I saw him was May 3rd. Between April 6th and May 3. I didn't sleep with him.
Thorp: (02:00) Okay. But what I'm asking is just a minute, just a minute. You woke up in a motel room on April 2nd correct?
PLAINTIFF: (02:10) April 6th
Thorp: (02:12) April 2 or April 6?
PLAINTIFF: (02:15) April 6th
Thorp: (02:17) All right. And after you woke up at the motel room you then had sex with him, correct?
PLAINTIFF: (02:23) Yes. Because at that point, it's good to keep the peace.
Thorp: (02:32) But you also had a dating relationship with him?
PLAINTIFF: (02:35) Because I wasn't sure. I wasn't sure if I before, before we ended up in the motel, I did like him and because of the dynamics I wasn't sure. I just kept denying to myself I was violated.
Thorp: (02:59) So here's the thing, I understand what you're saying and I hear what you're saying and it doesn't mean that it didn't happen. When we don't file a case, it doesn't mean it didn't happen. It just means we can't prove it in court to a jury that **a jury is not likely to convict**. And the only way we can file a case if this the jury, if we believe the jury will convict to the standard of beyond a reasonable doubt.
PLAINTIFF: (03:30) But if you put all the circumstantial evidence together. It's very clear because the first …
Thorp: (03:38) Well, I, I don't agree with you and I'll tell you why I agree with Ms Chung. The reason I don't agree with you is because a jury, in my experience doing this for 30 years, a jury had a really hard time. **If someone thinks they were raped** and then they have consensual sex with someone, then they have a relationship and they only go to the police after the breakup. That jury tends to think that the girl is angry and that she's only going to the police because she's angry. That's number one. Number two, there's no way that they can prove with any evidence other than your word and his word. You didn't go to the police after you thought that he raped you to prove whether or not he raped you. You weren't conscious that you can't prove that he

**1 / 8**

raped you. You just feel like maybe he did, but you don't know. That's not enough to beyond a reasonable doubt standard.

PLAINTIFF: (04:36) But he said he stretched me out. Why did he stretch me out?

Thorp: (04:41) Well, if he said that, how do we know which time he was referred to?

PLAINTIFF: (04:48) The first time.

Thorp: (04:49) How many times did you have sex with him?

PLAINTIFF: (04:51) When I was unconscious, I didn't know but when I was awake. Only one time.

Thorp: (05:06) So he's gonna say he's referring to the time that …

PLAINTIFF: I was awake?

Thorp: Right. Or he's gonna to say …

PLAINTIFF: That doesn't make sense.

Thorp: (05:16) Well, I think that's what he's going to argue to a jury and we, we're not going to be able to prove it otherwise.

PLAINTIFF: (05:23) And the first time I, uh, my, my first attempt to gather evidence was,

Speaker 1: (05:29) You told him, okay, maybe we can do anal sex and then you told him "I can't wait to kiss you." That doesn't sound like someone who was raped. That's not what most people do when they're raped. That's what most people do in a consensual relationship. And that's what a jury is going to think.

PLAINTIFF: (05:51) But I didn't sleep with him afterwards. I also refused his sexual advances multiple times.

Thorp: (06:00) But you did sleep with him after you might've been raped, but you don't even know if you were. You didn't go to the police. We can't prove it. That's the problem.

PLAINTIFF: (06:10) My first attempt.

Thorp: (06:12) Yeah. We can't prove that you were raped.

PLAINTIFF: (06:14) My first attempt to gather evidence was after I got home from the motel, I asked him if he cum and he said he didn't. So at that point I thought DNA evidence would be a must so …

Thorp: (06:32) It, that's fine. And I'm not blaming you, but I am telling you whether you relied on what he said or you didn't. We can't prove it. We have to be able to prove it with more than just you think you might've been raped. You know what I'm saying? We need independent evidence. We need **a forensic medical exam**. We need his semen. We need **evidence of force**. Um, text messages aren't enough, based upon the fact that you agreed that you were willing to do these things with him and then you had had consensual sex with him afterwards and you, it's your word against his word. We have nothing else to go on. We can't even prove that you were raped while you were sleeping. We can't prove it.

PLAINTIFF: (07:21) Because after I woke up in the motel room, I was afraid to, to run ...

Thorp: (07:29) I'm not blaming, you know, and I understand how you could be afraid. Okay. But it still doesn't help us prove the case. It's unfortunate, but we can't prove the case and we have to, **the law requires that we'd be able to prove it beyond a reasonable doubt**.

Thorp: (07:57) He said he had sex with me and the force is he stretched me out. Why? Why did a man need to stretch somebody out to have sex with?

Thorp: (08:13) It's a way people talk. It doesn't mean that he raped you alone and you also had consensual sex with him. We can't prove that he said that referring to rape. We can only prove that that referred to when he had sex with you as you admit that you did have consensual sex with him. It doesn't mean he's a good person and it doesn't mean you're a bad person. I understand that. It just means we can't prove it.

PLAINTIFF: (08:41) That consensual sex was in some condition. That's not, I was looking for.

Thorp: (08:49) It doesn't. That's fine. I understand that. But you did agree to have sex with him and because you agreed to have sex with him, we can't prove anything.

PLAINTIFF: (09:00) I agree. I agree. Because I didn't want to get into any confrontation in a motel room.

Thorp: (09:08) I understand that. And I understand you felt that you were in that position and it was a very

**2 / 8**

Transcript – Thorp 08/23/2019

difficult position for you and I feel badly and you are entitled to counseling if you want it. Um, as a victim, even though the case isn't getting filed, you can still get counseling for the state's victims fund and you're entitled to that. And, and it might be helpful for you because I can tell that you feel really badly about this and I feel badly for you. Would that be something that would be helpful to you?

PLAINTIFF: (09:42) No. I want criminal justice.

Thorp: (09:45) I know that, but I can't give it to you because **I can't get a jury to convict**. I can't even get to the level of filing the case. **We don't have sufficient evidence**. I wish we did. I really wish we did. Do you understand what I'm saying? I don't know if it's making sense to you cause I want you to understand. I don't want you to feel badly and I don't want you to feel wrong. Um, and I understand that that happens, but there are many cases where we know, we know and we believe that victim, but we can't prove it. And that's not saying it didn't happen. It just means we can prove it beyond a reasonable doubt.

PLAINTIFF: (10:44) But whether or not you can prove it shouldn't be the only factor that you consider to pursue a case. Thorp: (10:55) **But it's the way the law is**. We have to be able to prove a case to file it. We can't file something even though we believe that happened if we can't prove it. I have cases come through all the time, including murder cases where I believe the guy did it. I believe he's acting guilty. I believe he has the opportunity. I believe he had the motive. I even believe he should have denied it when he didn't. But I can't prove it because I have no evidence to show that he did the crime. I just have him been the last one that saw the victim. I have the victim dead. I have him having a prior relationship with the victim. I have him, you know, the victim, him having a motive because the victim broke up with him, but I have to still be able to prove he's the one who killed her and it's different than what we watch on the movies. It's different than what we watch on TV where we see, we see it and we know it, but in a court of law, it's beyond a reasonable doubt. And there are many cases that are so close, but they're not beyond a reasonable doubt. And so we can't bring them to justice. It doesn't mean we might never get the, we might get more evidence someday, but we don't have it now.

Thorp: (12:21) You know it doesn't stop us from filing it some other time. If we get more evidence that we just don't have it now.

PLAINTIFF: (12:34) Can I get a written letter?

Thorp: (12:38) We don't do that, but what are you asking me for?

PLAINTIFF: (12:41) For the reason that you declined the case.

Thorp: (12:46) We don't. We don't give, we don't give that. If you want to make a public records request, you can make a public records request to get a copy of our declaration sheet, which really says that we don't have enough evidence.

PLAINTIFF: (13:09) Uh, where can I make that request?

Thorp: (13:13) You make a public records act request, you would send it to the Pomona district attorney's office. Attention.

PLAINTIFF: (13:27) Can I make a request online?

Thorp: (13:30) No, you can't, you don't have to make it online. You can, you can do it with a letter or with an email.

PLAINTIFF: (13:40) Oh, where can I send the email to?

Thorp: (13:43) Okay, so you can send the email to, uh, hold on one second. Let me get the address. Are you there? Okay. So if you go online to the district attorney's office public website, you can do, you can follow the menu and there you can submit a public records request.

PLAINTIFF: (14:30) Ok, Gotcha.

Thorp: (14:32) Okay. Um, also you should know that, um, you can, you can make the request in writing and then we have a certain period of time ==you have to pay the copies, which I don't know, 15 cents or a dollar or something simple that for a copy, the copying, it should...== Okay. So I understand that you first made a police report in June, so it was more than two months later. And what was the reason that it took so long to call the

**3 / 8**

police?
PLAINTIFF: (15:24) Because I need time to process the whole thing and it's a very difficult decision.
Thorp: (15:32) I understand that. It's very, very hard isn't it? When something like that happened you feel traumatized and you're not sure you want to go public. I know, I know. It's difficult.
PLAINTIFF: (15:46) That's why I didn't come forward any sooner.
Thorp: (15:49) Right. Have you received any kinds of counseling?
PLAINTIFF: (15:53) Uh, I've been seeking treatment from Arcadia mental health center.
Thorp: (15:58) You are?
PLAINTIFF: (16:00) Arcadia mental health center.
Thorp: (16:03) Okay. And are you paying out of pocket or health insurance?
PLAINTIFF: (16:05) Uh, health insurance.
Thorp: (16:07) Okay. Um, does your health insurance limit the number of sessions?
PLAINTIFF: No.
Thorp: Okay, good. Because if it is, you could make a claim through our victim witness services and then they give you a certain, I think it's 10 or 20 sessions that I could refer you to someone if that's something you're interested in.
PLAINTIFF: (16:33) No, I don't really care about it.
Thorp: (16:37) You don't care about it?
Thorp: (16:41) How can you heal?
PLAINTIFF: (16:47) I don't know. I thought coming forward is my first step to heal.
Thorp: (16:53) I think it is, and I think it's,
PLAINTIFF: But it's not. It's not.
Thorp: (16:59) Because?
PLAINTIFF: (17:09) I was re-victimized by law enforcement.
Thorp: You were what? Re-victimize?
PLAINTIFF: Yea.
Thorp: (17:11)
I know it feels that way and I understand what you're saying because you want a case filed and you feel like you only will get justice if he goes to jail. Right?
PLAINTIFF: (17:21)Yeah.
Thorp: (17:25) But what you have to understand is even if we were to file a case, I don't think we have enough evidence, but there are many cases that we go to court on, even if they're fileable and we lose them because the jury have a hard time with them.
PLAINTIFF: (17:40) But it's your chance to (come to) educate the community.
Thorp: (17:45) And we do that all day long and we, we, we do that whenever we can. But we get to that point and I think our system and our people, uh, our community has over time, been much better about these cases, but we have to have evidence and we don't have enough evidence. We need something **more than the victim alone saying that this happened** and it seems like it should be announced, but it's not because,
PLAINTIFF: (18:25) But it's not only my words. He said that.
Thorp: (18:29) But he didn't say he raped you.
PLAINTIFF: (18:32) Of course. It's indirect. Indirect confession.
Thorp: (18:37) I know it's indirect, but the thing is he can argue the other side. So we have to look at other interpretations of the evidence.
PLAINTIFF: (18:45) But no matter how he argue, it doesn't make any sense because all of the circumstantial evidence shows that I didn't expect anything sexual. I refused his sexual advances after April 6.
Thorp: (19:00) That's the problem though, if that the rape occurred before April 6 and after the rape occurred.

**4 / 8**

Transcript – Thorp 08/23/2019

You thought you were raped and then you had sex with him. It doesn't matter.

PLAINTIFF: (19:12) No. Only in the motel room.

Thorp: (19:14) It sounds like it doesn't matter that myself for a jury to say I don't believe her or it's enough for a jury to say, I can't decide and we have to have all 12 people to believe beyond a reasonable doubt.

PLAINTIFF: (19:27) If I really wanted to have consensual sex with him how come afterwards we were seeing each other for a whole month and I didn't sleep with him, even one time.

Thorp: (19:40) I understand. I hear that argument and the jury, the defense is going to say that, well, if she thought she was raped, why did she keep seeing this man?

PLAINTIFF: (19:50) Because, because I wanted evidence.

Thorp: (19:56) But that's not how you get evidence. The way you get evidence, **if you're raped you go right away.**

PLAINTIFF: (20:01) Okay. Let's say I go right away after I got out of the motel. It's the same thing,

Thorp: (20:09) How?

PLAINTIFF: (20:10) I got DNA evidence and how? How can I prove he raped me?

Thorp: (20:16) Well, sometimes in a forensic exam, first of all, if the victim goes right away, if they think they were raped, that **gives credibility to their story**. That makes it sound more urgent and more believable, number one. Number two. Sometimes there's evidence of force and if they do a forensic exam, they can see if there's abrasion, if there's evidence of force. There's not always that, but sometimes there is.

PLAINTIFF: (20:44) I was not bleeding. I didn't have any wound.

Thorp: (20:48) It doesn't matter. The forensic examiner can see things that you and I cannot see. They have microscopes and they have other equipment and they can see often times evidence of force that's not visible to the naked eye. That's why people go to those. That's why we try to educate people, report right away and get a full physical exam when a victim goes immediately that shows their own belief in what they did and when they go with immediately that it's credible. It's something that's more believable, but if I think something traumatic happened to me and I wait many months, it doesn't mean it didn't happen. It just means **it's harder to persuade a jury** that I believe that it happened. His argument's going to be, she just made all this stuff because I broke up with her.

PLAINTIFF: (21:40) He didn't break up with me. He didn't.

Thorp: (21:48) Okay, well because we broke up or whatever it is that he will say, it doesn't mean he's not going to lie. We have to disprove his lies, but even disproving his lies doesn't prove that he raped you. **We have to have actual evidence of the rape**. It's like if I say if I say you stole $10 and I want the police to take a report, said he pointed the gun at me and stole $10 and you say, no, I didn't. And I said, yes, you did. The jury is not going to convict. I have no independent evidence. No other witness. And you text me and you say thanks for the $10 and I say that's evidence. That's evidence. No, you gave it to me. How do I prove? We have two different positions? I need something to break that and show the difference.

PLAINTIFF: (22:40) But it's him who brought so much alcohol.

Thorp: (22:44) **It doesn't matter. You drank it.**

PLAINTIFF: (22:47) But that's not my fault.

Thorp: (22:50) It's not your fault that you drank it. I am not saying any of this is your fault, but he didn't. There's no evidence of force and you consumed alcohol. You had sex with someone who doesn't agree, but we can't prove it.

PLAINTIFF: (23:05) He used alcohol to put me in a position that I can't resist.

Thorp: (23:11) Of course he did. Of course he did. And this happens, this doesn't happen all the time, but we still have to prove.

PLAINTIFF: (23:18) But all the text messages show he brought the alcohol.

Thorp: (23:24) But it doesn't matter. I mean, you chose to drink it with him. He's going to argue. She wanted to

**5 / 8**

have the alcohol and you're going to say, no I didn't. And then he's going to say, why did you drink it? And you are going to say, because I thought it tasted good and, and, and he's going to say, that doesn't mean I raped you. And you're going to say, well, you had me drink so much so that you could have sex with me when I couldn't resist. And he's going to say, no, you agreed to have sex and you're going to say, no, I didn't. He's going to say, prove it. We're going to say, how do we prove it?

PLAINTIFF: (23:57) Because I wasn't aroused.

Thorp: (24:01) Yeah, but that's all in your mind. I'm not saying that your mind isn't correct, but how do we prove that?

PLAINTIFF: (24:07) He said that. He said he stretched me out.

Thorp: (24:13) That's fine. I understand that there are, I mean there's consensual sex that happens sometimes too. It doesn't prove that it's a rape. I'm not saying you weren't raped. I'm just saying we can't prove it. There's a difference. And you go into the police and you making a police report, you taking charge and you coming forward and you getting your voice heard and that is a really brave thing you did. That's not easy to do, but it doesn't mean we can file a case. You know what I'm saying?

PLAINTIFF: (25:02) But I still believe,

Thorp: (25:05) Call me back and talk about this more. If you think of more things, I just want you to know, um, that there isn't, there isn't sufficient evidence to file this case right now. And I think it's very helpful for you to continue to go to counseling. Um, if you decide you want to talk to someone in victim services and you can do that. We don't have, we don't have enough to file the case.

PLAINTIFF: (25:33) But I still believe, I still believe if you try harder, you can convince the jury.

Thorp: (25:40) No, I, I've done this for 30 years. It's not enough.

PLAINTIFF: (25:45) Time is changing.

Thorp: (25:48) It is going to victimize you more to put you through it and have a jury say, we don't believe that we can prove this beyond a reasonable doubt. You're going to feel very badly. You're going to take your time. You know it's not going to be good for you either.

PLAINTIFF: (26:04) I want to be heard by the jury. How can you predict? How can you predict how the jury reacts? Time is changing.

Thorp: (26:13) 30 years of doing this and the evidence

PLAINTIFF: (26:18) changing time is changing. People don't think like before,

Thorp: (26:25) you're right, people don't think like before, but in those cases usually there's not consensual sex after a rape and there's not a long term relationship and a late report that makes it very difficult to prove and you don't even know where your first report to the police says you think you might've been raped but you don't know. So even you didn't know beyond a reasonable doubt.

PLAINTIFF: (26:51) I didn't know because we were dating. I didn't know.

Thorp: (26:57) How do you know now?

PLAINTIFF: (27:00) I told the detective, I came forward, I came across a news. Even a husband can rape their wives

Thorp: (27:09) Right. They can. But I'm telling you. How do you know that you were raped? You said at the time you didn't know you were raped. She's thought you might've been. How do you know now after this happened? Have you known now?

PLAINTIFF: (27:22) Because of our relationship, I, I didn't know when we were dating. My date would rape me. I don't know how to explain it. So I thought we were dating. That's why I was not sure if it was a rape. But later I learned even you are in a relationship. You can be raped by your partner.

Thorp: (27:56) You can, but it doesn't mean, I mean, so what you're telling me is

PLAINTIFF: (28:03) I thought.

Thorp: (28:06) You came a different understanding of the law

**6 / 8**

Transcript – Thorp 08/23/2019

PLAINTIFF: (28:11) because I thought rape would just occur between strangers. Not people have relationships.
Thorp: (28:21) So if that's the case, he raped you. Why did you continue to have a relationship with him?
PLAINTIFF: (28:32) I wasn't sure if I was raped.
Thorp: (28:34) Okay, so let me stop you right there and you weren't sure if you were raped. How would it jury know?
PLAINTIFF: (28:42) Because later I learned even people in a relationship.
Thorp: (28:47) Right, but that doesn't mean you were raped.
PLAINTIFF: (28:52) I was raped but just because,
Thorp: (28:55) no, that you just told me your weren't sure.
PLAINTIFF: (28:59) Because of the relationship. I thought rape happens between strangers.
Thorp: (29:11) and at the time you said you didn't even know that you were raped.
PLAINTIFF: (29:17) The only thing I was sure is I didn't want to have sex with him on April 6th
Thorp: (29:26) did you tell him that?
PLAINTIFF: (29:28) I didn't have a chance. I passed out.
Thorp: (29:33) How do you know if you pass out? How do you know that he raped you?
PLAINTIFF: (29:36) Because I was unconscious. I wasn't aware of any sexual act. I wasn't even aroused. That's why he had to stretch me out because,
Thorp: (29:50) but that if that happened, you then had consensual sex with them. That's the part that is a, is going to have trouble with it
PLAINTIFF: (29:58) because after I woke up in a motel room, I was numb. I was frozen. I didn't know how to process this. I just went along what he wanted because I, it's good for me to keep the peace in a motel room.
Thorp: (30:17) Okay, but if you wanted to keep the peace means you agreed,
PLAINTIFF: (30:24) no, my consent should be given before and during the sex, not after. After.
Thorp: (30:34) Okay. But the thing is you're, you're right about that, but how was he to know if you agreed to have sex with him? You didn't stop him. That's the second time. The second time you agreed to have sex with him. If you weren't just raped, why did you agree? that's not what most people do. And if you did that, it makes it hard for a jury.
PLAINTIFF: (31:00) I didn't agree, but I just didn't resist.
Thorp: (31:03) Okay. But that, that's, that doesn't, if you didn't resist and you went along with it, then it's not rape. If you went along with it, whether you don't have to overtly say yes, it's your body in your languages to not resist. I did not tell him no. Then he, he's under the belief that you're in agreement and then he doesn't get it. You know he has to have the intent to force you and there's no evidence of that.
PLAINTIFF: (31:38) But he raped me when I was unconscious.
Thorp: (31:42) But how do you know that if you are unconscious?
PLAINTIFF: (31:45) I wasn't aware of anything. I wasn't,
Thorp: (31:49) but how do you know you were raped?
PLAINTIFF: (31:53) Because when I woke up, my vagina was sore. I told the detective,
Thorp: (32:01) I know that, but you didn't. But we can't prove. We can't prove that because you then had consensual sex with him. It doesn't matter if you were keeping the peace, it's still consensual sex and a jury is going to think if you were raped and then you had consensual sex, that that's not what people do when they're race. So they must've, she must've agreed to it. And then you didn't report it after you left the motel room. You waited and had a relationship with him. I'm not saying you weren't raped but the jury is not going to believe it.
PLAINTIFF: (32:37) I know, but why did I refuse his sexual advances after April 6th?
Thorp: (32:44) I don't know, but it doesn't prove rape. That's not enough to prove rape.
PLAINTIFF: (32:50) It proves that I didn't want to have a sexual relationship.
Thorp: (32:54) No one from that time forward, it doesn't prove that he raped you before that. It just doesn't

prove that. Most people who are raped don't want a sexual or any kind of relationship. So the fact that you didn't kick him out and go right to the polices is where the problem is with proofs. And we also have no forensic evidence. So I feel like I'm saying the same thing over and over again, and it's not nothing new is being said, and I don't want you to feel badly that this doesn't mean it didn't happen. I'm just telling you it's not enough to prove. To file your public records act request and maybe talk to your counselor about this some more.
PLAINTIFF: (33:41) Okay.
Thorp: (33:48) The processing of this is going to go
PLAINTIFF: (33:52) okay. Okay. Okay.