# EXHIBIT 44

(Case No. 2:20-cv-04525)

Transcript of phone conversation between Plaintiff and Lieutenant TAMRA ROBERTS (Concord Police Department) on Dec 17, 2019

Roberts: Lieutenant Roberts.
Plaintiff: (00:10) Hi Lieutenant, this is XXX.
Roberts: (00:13) Oh, hi. Yeah, thanks for calling me back. Um, so I got the message that you wanted to talk with a watch commander about kind of a complaint that you had. So I'd like to talk with you about that.
Plaintiff: (00:26) Yeah. My case number is 19-13721.
Roberts: (00:32) yeah. Okay. I did pull the report. So I'm looking, I'm looking at a copy of the report and I briefly that with detective to kind of get right information he had gathered so far. But if you can kind of tell me, you know, what, what you're feeling and what your complaint is.
Plaintiff: (00:46) Yeah. I made the report on October 18th but nobody ever called me to follow up until I questioned about this case almost two months later. And the detective didn't try to contact the suspect until I questioned about the case.
Roberts: (01:09) Okay.
Plaintiff: (01:10) And right now I was told there's not enough evidence.
Roberts: (01:15) Yeah. So sexual assaults are very difficult to, to prosecute.
Plaintiff: (01:21) I understand. I did a lot of legal research. My testimony is legally enough to press charges.
Roberts: (01:30) No, no, absolutely not.
Plaintiff: (01:32) Do you want me to get an attorney?
Roberts: (01:35) You can. But yeah, just letting you know how it works here in Contra Costa County.
Plaintiff: (01:39) Of course I know how to work (it works).
Roberts: (01:42) but no, no. Your testimony is not enough. I assure you. That's definitely not correct. Um, we, we wish we wish that was enough. We would have so many cases filed if the victim's testimony is enough. But that's absolutely not enough. There needs to be physical evidence, uh, either DNA evidence or a confession from the suspect. Um, and we don't have any of those things. In this case, there's, there's no DNA evidence.
Plaintiff: (02:11) There's no need to use DNA evidence because the suspect already confessed.
Roberts: (02:18) No. To you or to who?
Plaintiff: (02:22) The text messages.
Roberts: (02:24) Nope. Oh, he confessed to having sex with you. That's,
Plaintiff: (02:27) He asked me how come every time I said no. Every time I resist.
Roberts: (02:33) Yeah. But then you got back together with him and continued.
Plaintiff: (02:37) I didn't know it was a crime.
Roberts: (02:40) Yeah. So I'm just kind of letting you know, unfortunately how it works in Contra Costa County.
Plaintiff: (02:46) I know how to work (it works).
Roberts: (02:48) Yeah. Well, but it doesn't sound like you do. We actually need more than what this case has. Um, that the district attorney's office won't prosecute on a case like this.
Plaintiff: (03:01) But you are not the da. Why do you make a decision?
Roberts: (03:04) We're the ones that would take it to the district attorney's office. So they, we are the ones that we take it to them and we would have to make an arrest and we can't do that in this case because we don't have enough evidence to make an arrest.
Plaintiff: (03:15) You didn't even submit to DA.
Roberts: (03:19) No, no, we won't because there's not enough. Yeah. We only submit the cases to the district attorney's office where we have evidence. If we don't have any evidence, then we don't submit the case to the district attorney.
Plaintiff: (03:29) You have my testimony and you have the text messages.
Roberts: (03:34) Yeah. So the text messages just proved that you had sex?
Plaintiff: (03:38) No, he said that. He asked me how come every time I said no.
Roberts: (03:43) Right. But then you kept having sex with him and getting back together.
Plaintiff: (03:46) I didn't keep having sex with him. Every time he forced himself on top of me.

Roberts: (03:53) I'm just letting you know that unfortunately the text messages, they actually work against you, they're actually in his favor. They actually would prove
Plaintiff: (04:02) no, I said that before I met him. I said I didn't want to rush sex.
Roberts: (04:07) But even after you had sex, you kept [inaudible].
Plaintiff: (04:10) We never, I never
Roberts: (04:12) for him to cum inside of you as long as you weren't ovulating and things like that. You had said you liked it when he came inside you, as long as you're not ovulating. So those are all his defense that
Plaintiff: (04:24) because he forced himself on top of me.
Roberts: (04:27) But you kept getting together with him. I'm just letting you know, unfortunately the text messages only work in his favor. They are not beneficial for your case. They would be beneficial for his defense case. And there's no evidence of a sexual assault. So unfortunately, the way that the, you know, it is here in Contra Costa County, the district attorney's office would never file a case like this. Um, I've been doing this for 18 years. I work sexual assault for five years. Um, they will never file a case like this. We need more unfortunately than. Then, um, you know, just the victim statement and I'm sorry that you went through the, you know, I have, I do apologize for that. That's horrible. But as far as us being able to prosecute it, we just can't
Roberts: (05:24) but it's, I'm glad that now you're aware of the law and that, you know, now you know, so that's something like this won't happen again cause I'm sorry. No, this must've been very hard for you and very traumatizing and I wish that we could do more.
Plaintiff: (05:44) I won't stop (pursuing justice).
Roberts: (05:46) Yeah, no, I understand. But unfortunately there's nothing more that can be done with this case.
Plaintiff: (05:53) I'm sure there's a lot of things you can do, but you just don't want to,
Roberts: (06:00) no, we actually can't. These text messages, like that's, that concrete's everything. I mean that's proof there that you were okay with having sex. You were okay with it.
Plaintiff: (06:12) Okay.
Roberts: (06:13) But that's what the text messages say the text messages proved that. So there's no way,
Plaintiff: (06:19) how can that's true.
Roberts: (06:21) I read through them. I read through them and their text messages or you know, his defense that you were okay with all of it and you kept getting together with him. You kept inviting, you know,
Plaintiff: (06:35) invite him.
Roberts: (06:36) Um, then you, you went on additional dates with him
Plaintiff: (06:41) because I didn't know it was a crime.
Roberts: (06:43) Well if you don't know that it's a crime then, then it's, you know, like if you don't know that it's wrong, then, then it's not, then how can you be against it? You know what I mean? How can it be offensive to you if you don't know that it's offensive when it happened that you know that now, but back when it happened, you didn't raise, you know what I mean?
Plaintiff: (07:04) I said no. I said no each time I said no.
Roberts: (07:09) Why did you get back together with him?
Plaintiff: (07:11) I told you I didn't know it was a crime.
Roberts: (07:15) Okay.
Plaintiff: (07:16) I thought it's a bad thing.
Roberts: (07:18) Even though you didn't like it and it didn't feel good, you kept doing it cause it wasn't, you didn't know it was a crime.
Plaintiff: (07:29) Yes.
Roberts: (07:29) He didn't like it and it didn't feel good and you didn't want to do it anymore. You didn't know where the crime. So that's why you kept doing it.
Plaintiff: (07:38) I didn't care. I didn't keep doing it. I saw him
Roberts: (07:48) sexually explicit messages about how you want him to cum inside you as long as you weren't ovulating, you want him to rub you
Plaintiff: (07:57) because he kept asking. He kept asking,
Roberts: (08:01) well, you could have blocked his number. You could have not seen him anymore or you could

**2 / 4**

Transcript – Roberts 12/17/2019

have not gotten together with him anymore. Or you could have let him know that you didn't like it and therefore you didn't want to see him anymore. And I'm just letting you know, you know, that, you know, that's kind of how the defense attorney or district attorney would look at this. Um, and it's, it's the text messages just kind of make it concrete that there's nothing that we could do because it shows,

Plaintiff: (08:30) why did you ignore the fact that each time I said no and each time I resisted? Why did you keep, why did you keep ignoring?

Roberts: (08:42) I'll do that in sexual play. Some people do that and they like it and it's exciting and so some people,

Plaintiff: (08:49) it's ridiculous. I didn't want,

Roberts: (08:54) but some people, some people will say no.

Plaintiff: (08:56) Why did you, why did you keep ignoring my text messages that I said I didn't want to rush sex?

Roberts: (09:06) Are you talking to him like I'm him cause he should. I don't know. I you didn't text me. I don't, I don't know what you mean. Why did he ignore it? I don't know. I don't know why he ignored what you were saying.

Plaintiff: (09:19) You said you read through my text messages right from the beginning. I said I didn't want to rush sex. I didn't want to have sex so soon.

Roberts: (09:27) I guess because your actions and the words were contradictory. Your words may have said that, but then you continue to get together with him when you knew what would happen because it happened over and over and over again. You continue to get together with him

Plaintiff: (09:40) because I told you I didn't know it was the crime.

Roberts: (09:45) Right, but you should still have known what didn't feel good and what you didn't want. So you don't, something doesn't need to be a crime for you to not want it anymore. Do you see what I'm saying? Something doesn't need to be a crime for you to say, I don't like this. I'm not going to get together with this person anymore because I don't like the way I feel

Plaintiff: (10:04) Do you know, do you know how many husbands hit their wives but their wives still stay with him?

Roberts: (10:12) Right. No, I understand that. Yeah. I deal with that every day. I'm very aware. This is a different situation. Yeah.

Plaintiff: (10:22) Same thing. I didn't like something about him doesn't mean I have to break up with him.

Roberts: (10:35) Okay. So yeah, I think, I don't know that we're going to be able to, I don't think I can understand what you're saying because if someone hurt me, I absolutely …

Roberts: (10:47) That's you, but not everybody.

Roberts: (10:49) Well, yeah. Most people, if they got raped would, wouldn't get together with that person again. Especially

Plaintiff: (10:55) I told you I didn't know it was a crime.

Roberts: (11:00) Right. Yeah. And that's unfortunate. Um, but it's six years later and there's, there's no evidence. I apologize, no, not evidence of a rape. There's evidence of you having sex multiple times. Yes. There's absolutely,

Plaintiff: (11:16) every time I said no, every time I resisted

Roberts: (11:21) again, that can be sexual play.

Plaintiff: (11:24) No, I said, I can't say I didn't want to have sex though.

Roberts: (11:31) Right. But again, a lot of people, that's what they do for sexual play is they say no and they resist. And that makes the excitement more, you know, it makes it more sexually exciting because the person say no. And so it would have been one thing if it happened one time and there were text messages saying, I said no, and you'd never got together with him again. That would be totally different. Okay. But that's not the case here. You kept getting together with him. You kept having sex with him.

Plaintiff: (12:02) I didn't have sex with him. Each time he forced himself on top of me.

Roberts: (12:08) Yeah. But it's, it's, a district attorney would have a very hard time convincing a jury of 11 people,

Plaintiff: (12:16) but you are not the da. You didn't even submit the case to DA.

Roberts: (12:20) No, we won't because the da has to have evidence. So we don't present a case to the district attorney where there's no evidence.

Plaintiff: (12:27) There is evidence,

Roberts: (12:30) There's no evidence of a rape, ma'am. There's no evidence of a rape. Okay? There's evidence of multiple sexual encounters, but there's no evidence of a rape. And so we cannot present the case to the district attorney's office. It's not, it's not possible. And they will not try a case like this because they know they can't convince the 11 people that this happened yet. You've still continued to get together,

Plaintiff: (12:56) you are not the da. You cannot make decisions for DA.

Roberts: (13:01) Absolutely we can. And we do every day. That's what we do because we make an arrest and then we take it to the da. But we can't make an arrest if there's no evidence of a crime. And unfortunately with this case, there's no evidence of a crime. But you know, so we can't change that. And I don't know that I can explain it any other way, but I am very sorry this happened to you and I am very glad that now you know the law and now you know your rights, and now you know that if someone makes you feel bad and does some.

Plaintiff: (Hung up)