# EXHIBIT 47

(Case No. 2:20-cv-04525)

Transcript of phone conversation between Plaintiff and CHRISTOPHER WALPOLE (Contra Costa County DA's office) on Jan 8, 2020

Walpole: Hi this is Christopher Walpole from district attorney's office in Contra Costa County.

Plaintiff: (00:05) Oh, hi. How are you?

Walpole: (00:07) Good, good. I'm calling you up because I know you spoke to Gleason and you wanted to talk to me.

Plaintiff: (00:17) Yeah. Have you got my email?

Walpole:

Plaintiff: Yeah. So, um, I disagree with the non-prosecution decision.

Walpole: (00:32) Yes, I understand. Um, I have looked at the reports. I have looked at the summary in this case and I believe you. I believe you what you say happened. I'm sure Ms Gleason does as well, unfortunately that's not really our filing standard of how we look at a case. I want to make sure you don't think that, you know, that we don't recognize. It's a matter of what I can prove beyond a reasonable doubt. 12 members of the jury thought the victim who was probably true that all the time unfortunate from our, what we come back if we don't get a guilty verdict, really frustrated, um, about the legal system, the high burden of proof. So when we look at a case, we have to look at it and figure out what the jury is going to do. The jury goes back, we think the guy did it. Uh, there just wasn't enough to prove something beyond a reasonable doubt. There's a chance that happened. So I just want to start off by telling you that what the legal standard is. I believe. Um, and if I was, you know, jury verdict. But unfortunately the jury members, the community and we have a reasonable doubt.

Plaintiff: (02:26) What makes you think you're not going to prove beyond a reasonable doubt?

Walpole: (02:33) There's a few things. I didn't go. The jury's probably gonna hesitate on. Anytime in a rape situation where the victims in a long relationship with that person and they were referred rates many times that I disagree with the jury on this trail. Many times jury would come back and say, if she was really raped why did she keep going back? Why did she stay in this relationship? Cause I'm a sexual assault prosecutor. It's a big hurdle, you know, normal members, the community experts to try to happen or what could happen. Yeah, I don't, I don't like that. One of the bigger issues, real strong operation, something to support it. But it's not a spring session. It's kind of a mixed bag as far as what he said. So that's kind of the biggest reasons why it's difficult for us to come back to the guilty verdict.

Strong corroboration

It's difficult for us to come back with a guilty verdict.

Plaintiff: (03:59) So why don't you consider using expert testimony?

Walpole: (04:05) Expert testimony. We just found this [inaudible]. The problem is many times the jury just disagreed with the expert. Here is what they are saying "If I was in her shoes, I wouldn't have had the relationship." I want to definitely think there's a lot. Fortunately I didn't have them,

Plaintiff: (04:36) but this is not the prosecution function standards because your duty is not just convict. Your duty is to pursue justice. It's not that just win a case

Walpole: (05:00) We only file cases we believe we can win. That's our filing standard.

When do we think when you witness proven beyond a reasonable doubt, beyond a reasonable doubt versus fortunately thousands of cases, people are arrested and brought in as a police officer, we want you to file it in this robbery and we can't, we can't file it,

Plaintiff: (05:45) but this sounds like just saying excuse.

Walpole: (05:51) That wasn't just an excuse.

Plaintiff: (05:58) Yeah, that's sounds to me just an excuse.

Walpole: (06:02) Well, fortunately it happened quite a bit. There's an emergency or a personal way or a robbery and we looked at the case and we think for ourselves, yeah, we think this person did it, but can we prove it

beyond a reasonable doubt to a jury? I'm sorry. I know it's not easy to see here. I'm sure it wasn't on here from this [inaudible]

Plaintiff: ([06:36](#)) but why do you keep ignoring the corroboration? I said many times I didn't want to rush to have sex. I also, I also said he set me up and he admitted it.

Walpole: ([06:59](#)) The results, like I said, the text messages are a bit of a mixed bag because it talks about for, he mentioned that there's times where you would put his penis inside you.

Plaintiff: ([07:10](#)) Because he lied and he messed up with another girl and I said that I, I said, you, you mess up with another girl. That's not me. I, I immediately responded. That's not me. It doesn't make any sense because I said many, many times I didn't want to rust. You have sex. It just doesn't make sense. I would put his penis in my vagina if I were that type of person, how come I challenged him "You set me up." It doesn't make any sense.

Walpole: ([07:53](#)) The other issue, one of the other issues is the fact that he was seeing other women, the defense is gonna try to beat that as a motive.

Plaintiff: ([08:01](#)) how comes after six years? How come? Why, why after six years? Because at the time I didn't know it's a crime.

Walpole: ([08:19](#)) I believe. I'm not saying what you're saying is

Plaintiff: ([08:19](#)) My motive has nothing to do with the crime because my motive is not a crime element.

Walpole: ([08:30](#)) Unfortunately, the defense is going to be able to bring it up,

Plaintiff: ([08:33](#)) but it's your job to explain to the jury, it's not a crime element,

Walpole: ([08:40](#)) not an element of the crime. I can't let you stop that,

Plaintiff: ([08:48](#)) but how come six years after six years,

Walpole: ([08:55](#)) part of the #Metoo movement that's one of the argument is no longer upset about the other women as a department. I get all that. When I look at this double edge aspect, the fact that he was seeing other women, that ugly would get you upset from a theoretical perspective. It's how my experience been doing this for years and they're not going to go through this whole process. And have you listened to that? My job is looking at, I'm looking at this, Oh, sorry.

Plaintiff: ([10:11](#)) You've got to explain it to the judge in federal court.

Walpole: Why

Plaintiff: I already filed the gov claim. I will take you guys to a federal court.

Walpole: ([10:33](#)) Okay.

Plaintiff: ([10:36](#)) Yeah. I will let you go. Thank you for calling.